**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| SINDOK CO., LTD, | ) |
|     Plaintiff and | ) |
|     Counterclaim Defendant | ) |
| v. | ) |
| GENESYS INDUSTRIAL CORP., | ) |
|     Defendant and | ) |
|     Counterclaim Plaintiff | ) |
| _____ | ) Case No. 4:22-cv-00613-GAF |
| GENESYS INDUSTRIAL CORP. | ) |
|     Third-Party Plaintiff | ) |
| v. | ) |
| TIMOTHY FACKLER | ) |
|     Third-Party Defendant | ) |

**THIRD-PARTY DEFENDANT TIMOTHY FACKLER'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(3)**
**AND SUGGESTIONS IN SUPPORT**
**\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\***

The third-party defendant Timothy Fackler ("Fackler") now requests the court to dismiss the third-party complaint (1) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and (2) for lack of venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406 and in support thereof submits this Motion.

# TABLE OF CONTENTS

Table of Authorities.................................................................................................... iii

Statement of Facts.......................................................................................................v

     A.    Fackler is a resident of Kentucky.............................................................v
     B.    Fackler brings Genesys and LMC together ...............................................v
     C.    Fackler starts working remotely for Genesys from Kentucky .................. vi
     D.    Fackler's dealings with Kentucky, Ohio, and Missouri .......................... vii
     E.    Fackler's contacts with Missouri beyond his limited employment with
           Genesys…………………………………………………………………...ix

INTRODUCTION. ...................................................................................................1

STANDARD OF DECISION. ...................................................................................1

ARGUMENT ...........................................................................................................2

     I.    The third-party complaint should be dismissed because it does not
          establish that Fackler is subject to the court's personal jurisdiction
          in Missouri. ...........................................................................................2

          A.    Genesys fails to meet the requirements of Missouri's long arm
              statute because the alleged conduct by Fackler did not occur in
              Missouri and the third-party complaint does not allege that
              Fackler intended or could reasonably have foreseen that his
              actions would produce actionable consequences in Missouri...............2

          B.    Genesys fails to establish personal jurisdiction over Fackler
              where there is no indication that he had sufficient minimum
              contacts with Missouri to satisfy the requirements of the due
              process clause of the Fourteenth Amendment. .....................................6

     II.    The third-party complaint against Fackler should be dismissed
          pursuant to Fed. R. Civ. P. 12(b)(3) because venue lies not in
          Missouri, but in the Western District of Kentucky.....................................12

     III.    Alternatively, the third-party claim should be transferred to the
          Western District of Kentucky under 28 U.S.C. § 1406..............................14

Conclusion .............................................................................................................15

# TABLE OF AUTHORITIES

*Aftanase v. Economy Baler Co.,*
    343 F.2d 187 (8th Cir. 1965). ........................................................................7

*Angoff v. Marion A. Allen, Inc.,*
    39 S.W.3d 483 (Mo. 2001).............................................................................1

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*,
    571 U.S. 49 (2013)................................................................................12, 13

*BNSF Ry. Co. v. Tyrrell*,
    581 U.S. 402 (2017)....................................................................................10

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
    582 U.S. 255 (2017)......................................................................................8

*Bryant v. Smith Interior Design Group, Inc.*,
    310 S.W.3d 227 (Mo. 2010).........................................................................3

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................................10, 11

*Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott*,
    8 S.W.3d 893 (Mo. App. W.D. 2000)...........................................................2

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*,
    702 F.3d 472 (8th Cir. 2012). ......................................................................1

*Digi–Tel Holdings, Inc. v. Proteq Telecomm., Ltd.*,
    89 F.3d 519 (8th Cir. 1996). .........................................................................7

*Epps v. Stewart Info. Services Corp.*
    327 F.3d 642 (8th Cir. 2003). ......................................................................2

*Hanson v. Denckla*,
    357 U.S. 235 (1958)......................................................................................6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)....................................................................................10

*In re Marriage of Berry*,
    155 S.W.3d 838 (Mo. Ct. App. 2005). ..........................................................1

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)......................................................................................6

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
    648 F.3d 588 (8th Cir. 2011). ...................................................................2

*Miller v. Nippon Carbon Co.*,
    528 F.3d 1087 (8th Cir.2008). ...............................................................10

*Noble v. Shawnee Gun Shop, Inc.*
    316 S.W. 3d 364 (Mo. App. W.D. 2010) ...........................................2, 3

*Peoples Bank v. Frazee*,
    318 S.W.3d 121 (Mo. 2010) ....................................................................10

*Sondergard v. Miles, Inc.*,
    985 F.2d 1389 (8th Cir. 1993). ................................................................10

*State ex rel. Norfolk S. Ry. Co.*,
    512 S.W.3d 41 (Mo. 2017) .........................................................................8

*Steen v. Murray*,
    770 F.3d 698 (8th Cir. 2014). ...................................................................13

*Steinbuch v. Cutler*,
    518 F.3d 580 (8th Cir. 2008). .....................................................................9

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
    646 F.3d 589 (8th Cir. 2011). .........................................................2, 8, 10

*Woodke v. Dahm*,
    70 F.3d 983 (8th Cir. 1995). ....................................................................13

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ...................................................................................6

**Statutes:**

MO. REV. STAT. § 506.500. .............................................................................1, 2

28 U.S.C. § 1406(a). ..............................................................................12, 13, 14

28 U.S.C. § 1391 ............................................................................................12, 13

**Secondary Authorities:**

7 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE §1689 (3d ed. 2023) .................14

14D Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 3827 (4th ed. 2023) ...........14

# STATEMENT OF FACTS

### A.     Fackler is a resident of Kentucky

(1)     Fackler has been a continuous and exclusive resident of the Commonwealth of Kentucky since at least 2005.  Declaration of Timothy Fackler, p.1, ¶ 3.[1]

(2)     Fackler owns a home in Kentucky at 1280 East Highway 42, La Grange, where he resides, which is situated within the Western District of Kentucky.  Declaration of Timothy Fackler, p. 1, ¶ 2.

(3)     He has held a Kentucky driver's license since 2005.  Declaration of Timothy Fackler, p. 2, ¶ 4.

(4)     He has been a registered voter in Oldham County, Kentucky since 2015, and he has voted in every election in Oldham County, for which he was physically present in the county since 2015.  Declaration of Timothy Fackler, p. 2, ¶ 5.

### B.     Fackler brings Genesys and LMC together

(5)     Fackler has worked as a project manager in the construction of automotive production lines for some of the biggest car manufacturers like Toyota, Nissan and Ford since 2002.  Declaration of Timothy Fackler, p. 2, ¶ 6.

(6)     In 2019, Fackler, through a longstanding relationship with Ron Schmidt, the president of Lordstown Motor Company in Warren Ohio ("LMC"), became aware of LMC's desire to build an electric vehicle production facility in Warren, Ohio.  Declaration of Timothy Fackler, p. 2, ¶ 7.

(7)     Fackler travelled to Warren, Ohio and toured the site.  Declaration of Timothy Fackler, p. 2, ¶ 8.

---

[1] The Declaration of Timothy Fackler is filed herewith as Exhibit 1.

(8)     Fackler was interested in working on the project, and expressed an interest in finding a suitable entity that could help him realize the project.  Declaration of Timothy Fackler, p. 2, ¶ 9.

(9)     Fackler, along with several other of Fackler's business associates ("Fackler's Team") discussed options on how to complete the LMC project.  Declaration of Timothy Fackler, p. 2, ¶ 10.

(10)    Fackler contacted Roger Hagan, the executive vice president of Genesys to begin discussions on working together on the LMC project in Warren, Ohio.  Declaration of Timothy Fackler, p. 2, ¶ 11.

(11)    These discussions started by telephone and e-mail, and then progressed to an in-person meeting in Nashville, Tennessee between Fackler and his Team and Matthew Perry, Kris Dickerson, Gregory Kelly, and Roger Hagen, from Genesys to finalize discussions about moving forward with the LMC project.  Declaration of Timothy Fackler, p. 2, ¶ 12.

(12)    Upon concluding the meeting in Nashville, Tennessee, Fackler arranged for Genesys to join him in Lordstown, Ohio to walk through the plant and meet some of the LMC directors.  Declaration of Timothy Fackler, p. 2, ¶ 13.

(13)    While in Ohio, Genesys representatives, Fackler, and LMC representatives met to discuss bids on the project.  Declaration of Timothy Fackler, p. 2, ¶ 14.

(14)    Richard Schmidt and Ron Trautzch, the body shop and stamping director for LMC, desired Fackler to have a role in the project and requested Fackler to review the bidding project.  Declaration of Timothy Fackler, p. 3, ¶ 15.

### C. Fackler starts working remotely for Genesys from Kentucky

(15)     At the conclusion of the site visit, Genesys offered Fackler and the Fackler Team employment at Genesys.  Declaration of Timothy Fackler, p. 3, ¶ 16.

(16)     While Roger Hagen, on behalf of Genesys, represented that it had an interest in developing a long-term relationship with Fackler, Fackler was adamant that he would not move to Missouri and that Genesys was not a long-term job for him.  Declaration of Timothy Fackler, p. 3, ¶ 17.

(17)     Fackler informed Genesys prior to any employment relationship that he had an open offer with Lesco, located in Oldham County, Kentucky, and that he fully intended to finish his career with that entity.  Lesco is a competitor of Genesys.  Declaration of Timothy Fackler, p. 3, ¶ 18.

(18)     Genesys understood and elected to employ him as a remote employee. Declaration of Timothy Fackler, p. 3, ¶ 19.

(19)     The project itself was to take approximately eight (8) to ten (10) months. Declaration of Timothy Fackler, p. 3, ¶ 20.

(20)     Fackler received the Genesys offer letter in Kentucky and reviewed, negotiated, executed, and signed his employment contract from Kentucky.  Declaration of Timothy Fackler, p. 3, ¶ 21.

(21)     The offer letter sent by Genesys to Fackler did not include a forum-selection clause.  Declaration of Timothy Fackler, p. 3, ¶ 22.

(22)     Since January of 2020, Fackler was an employee of Genesys.  Declaration of Timothy Fackler, p. 3, ¶ 23.

**D.** **Fackler's dealings with Kentucky, Ohio, and Missouri**

(23)    Once employed, Fackler did almost all of his business on the Genesys-LMC project exclusively from his home in Kentucky or at the plant site in Lordstown, Ohio, except for infrequent trips to Missouri.  Declaration of Timothy Fackler, p. 3, ¶ 24.

(24)    Once Fackler was hired by Genesys, the Genesys-LMC contract was negotiated and executed in Lordstown, Ohio.  Declaration of Timothy Fackler, p. 3, ¶ 25.

(25)    Fackler visited the Missouri office on no more than three (3) total occasions to discuss implementation and procedure of the Genesys-LMC contract with the Genesys team. Declaration of Timothy Fackler, p. 4, ¶ 26.

(26)    All other meetings related to the Genesys-LMC contract were conducted outside of Missouri.  Declaration of Timothy Fackler, p. 4, ¶ 27.

(27)    Fackler conducted his site visits for the project in Ohio. Declaration of Timothy Fackler, p. 4, ¶ 28.

(28)    Fackler performed over approximately 65% of his tasks for the Genesys-LMC project from his home office in Kentucky.  Declaration of Timothy Fackler, p. 4, ¶ 29.

(29)    Fackler performed the approximately remaining 35% of his tasks related to the Genesys-LMC project on-site in Lordstown, Ohio.  Declaration of Timothy Fackler, p. 4, ¶ 30.

(30)    Fackler's primary office location during his employment with Genesys was at his home address in Kentucky.  Declaration of Timothy Fackler, p. 4, ¶ 31.

(31)    Fackler sent virtually all e-mail correspondence with respect to the Genesys-LMC contract from his home office in Kentucky.  When he was on-site at the Lordstown, Ohio plant, he sent work related e-mails, with respect to the Genesys-LMC contract, from Lordstown, Ohio. Declaration of Timothy Fackler, p. 4, ¶ 32.

(32)     None of the e-mail correspondence referenced in the third-party complaint that was allegedly sent by Fackler originated in Missouri.  Declaration of Timothy Fackler, p. 4, ¶ 33.

(33)     Any phone conversations Fackler had with personnel at LMC, occurred while he was physically present in Kentucky, or while he was on-site in Lordstown, Ohio.  Declaration of Timothy Fackler, p. 4, ¶ 34.

(34)     Fackler did not have any phone conversations with personnel at LMC while he was visiting Genesys in Missouri.  Declaration of Timothy Fackler, p. 4, ¶ 35.

(35)     The negotiation for the mutual termination of the Genesys-LMC contract occurred in Lordstown, Ohio and remotely from Fackler's office in Kentucky.  Declaration of Timothy Fackler, p. 5, ¶ 36.

(36)     Fackler was employed with Genesys for eighteen months, from January, 2020 until February, 2022.  Declaration of Timothy Fackler, p. 5, ¶ 37.

**E. Fackler's contacts with Missouri beyond his limited employment with Genesys**

(37)     Prior to his limited period and relationship with Genesys, Fackler had not travelled to Missouri.  Declaration of Timothy Fackler, p. 5, ¶ 38.

(38)     Fackler ceased travelling to Missouri in October 2021 and has not returned to Missouri since.  Declaration of Timothy Fackler, p. 5, ¶ 39.

(39)     Fackler does not own property in Missouri.  Declaration of Timothy Fackler, p. 5, ¶ 40.

(40)     Fackler does not have any obligation to, and does not, pay taxes of any kind to Missouri, or to any of its political subdivisions, including income taxes.  Declaration of Timothy Fackler, p. 5, ¶ 41.

**INTRODUCTION**

Genesys Industrial Corporation ("Genesys") filed a third-party complaint against Fackler alleging unauthorized intentional interference with its contract with a non-party entity, Lordstown EV Corporation f/k/a Lordstown Motors Corporation ("LMC"). Fackler seeks dismissal of the action against him because this Court lacks personal jurisdiction over him.

Further, Fackler, who is a Kentucky resident, engaged in alleged wrongful activities from Kentucky, and, from there, allegedly improperly communicated with an Ohio company located in Ohio. Venue for Genesys' claim against Fackler lies in Kentucky, and the third-party complaint against him should be dismissed without prejudice.

**STANDARD OF DECISION**

To have personal jurisdiction over Fackler, Genesys "must state sufficient facts in the complaint to support a reasonable inference that the defendant [… ] can be subjected to jurisdiction within the state.'" *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474 (8th Cir. 2012). Genesys bears the burden of proving facts supporting personal jurisdiction. *Id.* at 475. Genesys "must make a *prima facie* showing that (1) the cause of action arose out of an activity covered by Missouri's long-arm statute,…and (2) [Fackler] had sufficient minimum contacts with Missouri to satisfy the requirements of due process." *In re Marriage of Berry*, 155 S.W.3d 838, 840 (Mo. Ct. App. 2005). Missouri's long-arm statute confers jurisdiction to the extent allowed by the Due Process Clause. Mo. Rev. Stat. § 506.500.

A reviewing court evaluates personal jurisdiction by considering the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri sufficient to satisfy due process. *Angoff v. Marion A. Allen, Inc.,* 39 S.W.3d 483, 487 (Mo. 2001). A court

may consider supporting affidavits and exhibits. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). When personal jurisdiction is contested theoretically, rather than factually, i.e., through disputing the accuracy of the facts as stated by plaintiff, no hearing need be held. *Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003). Instead, the Court relies on pleadings and affidavits, then considers the facts in the light most favorable to the nonmoving party and resolves all factual conflicts in favor of that party. *Id.*

## ARGUMENT

I.  **The third-party complaint should be dismissed because it does not establish that Fackler is subject to the court's personal jurisdiction in Missouri.**

A.  **Genesys fails to meet the requirements of Missouri's long arm statute because the alleged conduct by Fackler did not occur in Missouri and the third-party complaint does not allege that Fackler intended or could reasonably have foreseen that his actions would produce actionable consequences in Missouri.**

As a threshold matter, in order to assert personal jurisdiction over an out-of-state defendant, the cause of action must be an activity covered by Missouri's long-arm statute, which includes "the commission of a tortious act within the state of Missouri." Mo. Rev. Stat § 506.500.1(3); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). For the statute to apply, the tortious act may occur outside of Missouri, so long as it "produces actionable consequences" in Missouri. *Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott*, 8 S.W.3d 893, 903 (Mo. App. W.D. 2000).

Some Missouri courts have held that the extraterritorial tortious act must have been deliberately designed to move into Missouri and injure the plaintiff, while other Missouri courts have determined that it must be reasonably foreseeable that defendant's extraterritorial tortious act could have an effect in the state of Missouri. *See Noble v. Shawnee Gun Shop, Inc.* 316 S.W. 3d 364, 371 (Mo. App. W.D. 2010) (analyzing whether the consequences must be intentionally

directed or whether mere foreseeability is sufficient). While Missouri courts are split on which standard applies, the most recent Missouri Supreme Court opinion on this issue suggests that mere foreseeability is sufficient rather than deliberate action. *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 232 (Mo. 2010).

In *Bryant,* it was reasonably foreseeable that a consequence could be felt in the state of Missouri when there was direct interaction with a Missouri resident. Here, however, there is no allegation that Fackler's alleged tortious conduct, which occurred in Kentucky, would result in reasonably foreseeable consequences in Missouri. *See Noble*, 316 S.W.3d at 371 (showing required of a plaintiff is less stringent when a product is placed in the stream of commerce than when the non-resident defendant is engaged in providing a service).

Genesys does not articulate any facts showing an intention or knowledge by Fackler that his alleged conduct would have effects in Missouri. Should this Court apply the lower foreseeability standard rather than the deliberate design standard, Genesys still fails to allege that Fackler's action would foreseeable result in injury in Missouri.

Genesys alleges that it had a business expectancy of profiting approximately $55 million in its contract with LMC. ECF No. 34, p. 12, ¶ 2. Genesys claims that Fackler's tortious act giving rise to the claim was him allegedly "going behind the back of Genesys in telling LMC to withhold payment from Genesys despite such amounts being contractually owed by LMC under the contract." *Id.* at p. 30, ¶ 106. Specifically, Genesys alleges that on June 30, 2021, Fackler e-mailed LMC about concerns involving the Genesys-LMC Contract. *Id.* at p. 22, ¶¶ 60–61. The June 30 email, allegedly expressed "concern of the project, project timeliness and project overall deliverables" and "pointed out ***LMC*** delays and ***potential*** issues with contract deliverables." *Id.* (emphasis added). Genesys' claim does not articulate an alleged intent behind the email. The

only fact that Genesys alleges is that Fackler sent the email without authority and did not copy anyone from Genesys on the email. ECF No. 34, p. 22, ¶¶ 60–61.

These e-mail excerpts do not show any intention of harm being felt in Missouri. In other words, the claim does not allege facts that Fackler could have foreseen that sending such an email would have resulted in the negotiated termination of the Genesys-LMC Contract. Instead, the allegations show Fackler providing a status update: LMC was allegedly delayed; and there were potential issues with contract deliverables. This is supported by Genesys' own allegations regarding Fackler's role at Genesys. Genesys alleges that Fackler's job description includes "work[ing] with 'clients and subcontractors to develop successful project plans, schedules and budgets.'" ECF No. 34, p. 15, ¶ 20. Genesys alleges that Fackler "…was responsible for managing the business relationship between Genesys, LMC and the subcontractors…." *Id.* at p. 15, ¶ 24. Because the alleged tortious conduct occurred outside of Missouri, Genesys must allege that it is foreseeable that Fackler's communications with LMC would give rise to actionable conduct in Missouri.

Genesys further alleges that on or around January 13, 2022, Fackler emailed LMC to "stop all payments going to Genesys" because of financial "issues." *Id.* at p. 26, ¶¶ 82–86. Notably, at the time Fackler allegedly sent this e-mail, Genesys was already in discussions with LMC about how and whether to proceed forward with the Genesys-LMC Contract. *See id.* at p. 25, ¶ 81 ("Due to these [alleged] continued delays [by Sindok], Genesys was forced into discussions with LMC in late fall 2021 on how to proceed."). Genesys alleges that Fackler told LMC to withhold payment. *Id.* at p. 30, ¶ 106. However, Genesys merely recites Fackler's suggestion for a payment structure given the ongoing discussions between Genesys, LMC and

Sindok.  Genesys states that Fackler emailed representing "'*we* [Fackler and LMC][2] *may* have to consider ***escrowing*** all future payments to Genesys until proof of payment is delivered and then verified.'"  ECF No. 34, 26, ¶ 83 (emphasis added).

This email does not articulate intentional acts or tortious conduct.  Moreover, Genesys does not allege that by sending this email to LMC, Fackler could have reasonably foreseen that it would result in the termination of the Genesys-LMC Contract.  Fackler did not exhort the suspension or withholding of payment and Genesys does not so allege.  Instead, Genesys provides an excerpt from an email where Fackler provides options and suggestions to reach a mutually agreeable resolution given the ongoing disputes between Genesys and Sindok.  *Id.* at p. 26, ¶ 82–83.  The phrase "escrow" supports this position and shows that Fackler did not expect or intend funds to be withheld from Genesys, but instead was suggesting a deposit of the funds for safe keeping until the parties could resolve the disputes between them.

Genesys alleges that Fackler emailed out of concern for LMC.  Genesys alleges Fackler did not want LMC to become stuck between "claims and suits over non-payment for work requested and performed." *Id.* at p. 26, ¶ 84. Genesys alleges that Fackler was currying favor to continue with the contract once he left for Lesco.  *Id.* This again does not give rise to foreseeable action. Genesys knew Fackler intended to work for Lesco after Genesys. *See* Statement of Facts, *supra,* p. vii, ¶ 17.  Genesys knew Fackler had a previous relationship with LMC because Fackler introduced Genesys to the LMC project and directors prior to his hire.  *Id.* § B, *supra,*

---

[2]    The bracketing of the quote was inserted by Genesys in its third-party complaint. Fackler's position is that "we" references Genesys and LMC and that Fackler provided information as a representative of Genesys.

pg. v, Genesys knew that the Genesys-LMC Contract could be terminated because it was already in discussions with LMC prior to Fackler allegedly sending the email. ECF No. 34, p. 25, ¶ 81.

Fackler's alleged tortious conduct, of which Genesys complains, does not have a connection to Missouri. Fackler was working remotely out of Kentucky and as such, any emails sent were from Kentucky. The alleged emails were not sent to Genesys in Missouri, but to LMC, in Ohio. *Id.* at p. 22, ¶ 61 and p. 26, ¶ 83. Thus, the alleged actions by Fackler have no connection to Missouri and Genesys fails to allege that it was foreseeable that Fackler's actions would result in harm in the state of Missouri. If anything, the facts establish Fackler's attempts to salvage what was arguably a failing and mismanaged project.

Thus, the third-party complaint must be dismissed for lack of personal jurisdiction over Fackler pursuant to Fed. R. Civ. P. 12(b)(2) because Genesys fails to establish that the conduct covered by Missouri's long-arm statute.

**B.     Genesys fails to establish personal jurisdiction over Fackler where there is no indication that he had sufficient minimum contacts with Missouri to satisfy the requirements of the due process clause of the Fourteenth Amendment.**

Personal jurisdiction over the out-of-state defendant must also satisfy the Due Process Clause of the Fourteenth Amendment. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The Fourteenth Amendment's Due Process Clause bars Missouri courts from exercising personal jurisdiction over an out-of-state defendant where to do so offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Accordingly, this court may assert personal jurisdiction over Fackler only if certain minimum contacts between Missouri and Fackler are established.

When evaluating minimum contacts, the focus is on whether "there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Eighth Circuit has developed a five-factor test to evaluate whether defendant's actions are sufficient to support jurisdiction. *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965). These factors include: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Id.* The first three factors are primary factors, and the remaining two factors are secondary factors. *Id.* The third factor distinguishes whether the jurisdiction is specific or general. *Digi–Tel Holdings, Inc. v. Proteq Telecomm., Ltd.*, 89 F.3d 519, 523 n. 4 (8th Cir. 1996).

    1. <u>The nature and quality of the contacts Fackler had with Missouri arose from his employment relationship with Genesys and were solely related to the Genesys-LMC Contract.</u>

Fackler, apart from this limited period and relationship with Genesys, had not travelled to Missouri, does not own property in Missouri, and has no other substantial contacts in Missouri. Fackler does not pay any sort of taxes to Missouri—including any income tax. Fackler's sole connection to Missouri arises from his employment relationship with Genesys. Even in Fackler's role as an employee with Genesys, his contacts with Missouri were limited. *See* Statement of Facts, *supra,* pg. vii, § D (articulating the circumstances giving rise to the Genesys-LMC Contract formation). Thus, the quality of the contacts Fackler has with Missouri are not so significant that Fackler could expect to have to defend a tortious interference lawsuit in Missouri.

## 2. The quantity of the contacts was minimal.

Fackler visited Missouri related to the project no more than two or three times. Genesys and LMC negotiated, entered into, and ultimately mutually terminated the Genesys-LMC Contract in Ohio. Genesys was to perform work at the plant in Ohio. Once Fackler informed Genesys he planned to leave once Genesys and LMC finalized its dispute, he ceased traveling to Missouri altogether.

## 3. There is no relationship between the tortious interference claim and the state of Missouri.

As discussed above, this factor is geared towards distinguishing between specific jurisdiction and general jurisdiction. Personal jurisdiction can be specific or general. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction…refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Viasystems, Inc.*, 646 F.3d at 593 (8th Cir. 2011).

### 3(a). Missouri does not have specific jurisdiction over Fackler because Fackler's alleged actionable conduct did not occur in Missouri.

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017). "[I]n other words, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* "Only if the instant suit arises out of [the defendant's] contacts with Missouri does Missouri have specific jurisdiction." *State ex rel. Norfolk S. Ry. Co.*, 512 S.W.3d 41, 49 (Mo. 2017). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a

defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 264.  The Eighth Circuit has said specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation "result[s] from injuries ... relating to [the defendant's] activities [in the forum state.]" *Steinbuch v. Cutler,* 518 F.3d 580, 586 (8th Cir. 2008).

Genesys is suing Fackler as a *third-party defendant* for alleged intentional and unauthorized conduct intended to encourage and induce LMC to terminate its contract with Genesys.  Fackler is not a party in the primary suit.  Missouri does not have specific jurisdiction over Fackler because the claim asserted against him did not arise out of his conduct in Missouri or his contacts in Missouri.

The alleged emails did not involve any individual or entity residing in the state of Missouri.  Fackler is a resident of Kentucky.  Fackler's alleged emails concerning the Genesys-LMC Contract were sent from his home office in Kentucky. *See supra* Statement of Facts, p. viii, ¶ 31. Fackler sent most of his emails concerning the Genesys-LMC Contract from his residence in Kentucky or from the Ohio site location. Fackler's sole ties to Missouri arise out of his employment relationship with Genesys.

Remarkably, Genesys maintains that the alleged actions that gave rise to the suit were not within the scope of his employment relationship.  ECF No. 34 at p. 26, ¶ 83.  As such, Fackler was, according to Genesys, not performing the alleged action within the scope of his employment and, transacting business on behalf of a Missouri corporation.  Finally, Fackler did not send the alleged email to a Missouri company, but instead to a company located in Ohio. The complaint fails to allege that Fackler engaged in specific acts in Missouri and further fails to show the intention of Fackler to direct his actions to Missouri.  As such, there is no specific

jurisdiction for the controversy between Genesys and Fackler in Missouri. Thus, the third-party complaint should be dismissed.

> 3(b).    Missouri does not have general jurisdiction over Fackler. Fackler's sole ties to the state of Missouri arise from his employment with Genesys and mere employment in a specific state, without more, is insufficient to establish personal jurisdiction.

A court has "general jurisdiction" over an out-of-state defendant if the defendant's connections with the state are systematic, continuous, and substantial enough to furnish personal jurisdiction over the defendant based on any cause of action—even one that is unrelated to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, (1984). If a court has general jurisdiction over an out-of-state defendant, it can "adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir.2008). A court has general personal jurisdiction over out-of-state defendants whose "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Like specific jurisdiction, general jurisdiction can only be asserted insofar as it is authorized by state law and permitted by the Due Process Clause. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993). Fackler is an individual and "for an [out-of-state] individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile..." *Viasystems, Inc.*, 646 F.3d at 596.

The mere existence of an employment contract is not sufficient to establish personal jurisdiction over Fackler. *See Peoples Bank v. Frazee*, 318 S.W.3d 121, 129–30 (Mo. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("[a]n individual's contract with an out-of-state party alone" cannot "automatically establish sufficiently minimum contacts in the other party's home forum.")). Instead, whether an execution of a contract with an out-of-

state party can constitute a sufficient contact for due process analysis is a multifaceted, fact-specific inquiry, and never a mechanical application of rules. *Id.* Prior negotiations and "contemplated future consequences," as well as the terms of the contract and the parties' course of dealings, are all factors that must be evaluated in determining "whether the defendant purposefully established minimum contacts within the forum." *Id.*

4.  <u>The dispute between Genesys and Fackler is better adjudicated in Kentucky, where Fackler is a resident and Genesys is a registered foreign entity.</u>

The dispute between Genesys and Fackler is unrelated to the Genesys Sindok dispute before this court. Kentucky is the more appropriate forum. Genesys knew at the onset that Fackler was a resident of Kentucky and authorized him to be a remote employee. *See* Statement of Facts, *supra,* p. vii, ¶ 18. Genesys does not have a forum selection clause in its contract with Fackler. *Id., supra,* p. vii, ¶ 21. When Fackler indicated he would no longer travel to Missouri, Genesys did not object. *Id., supra,* p. ix, ¶ 38. Genesys is a foreign entity in good standing with the state of Kentucky. *See* Exhibit 2, Certificate of Authorization. Thus, Kentucky is the better forum to resolve the dispute between Fackler and Genesys.

5.  <u>Missouri is an inconvenient forum for Fackler because none of the facts giving rise to Genesys' claim against him occurred in Missouri.</u>

Even if the Court were to determine that Fackler had some level of minimum contacts with Missouri, the exercise of personal jurisdiction over him would nevertheless violate the Due Process Clause because it would not comport with "fair play and substantial justice." *Burger King*, 471 U.S. 462 at 476. This provides an additional, independent basis to dismiss the action against Fackler.

Genesys brought Fackler into a suit in Missouri as a third-party defendant. Fackler is not a party to the Sindok-Genesys contract, which is the subject of the litigation before this Court.

Sindok, a South Korean Company, sued Genesys, a Missouri corporation for unpaid funds from a contract Sindok-Genesys contract amounting to $4,339,431.16. Genesys countersued Sindok, for the amounts paid to Sindok totaling, $7,216,962.51, $500,000.00 in repair value, and lost profits estimated to be $55 million.

Sindok sued Genesys in Missouri because Genesys' headquarters is in Missouri. Complaint, ECF No. 1, p. 1, ¶ 2. The dispute between Sindok and Genesys is unrelated to Fackler. Genesys is forcing Fackler to defend its third-party suit in a multi-million-dollar breach of contract dispute between two corporations. Fackler is not a party to the contract in dispute. *Id.* at p. 2, ¶ 9. It is inconvenient for Fackler to defend his personal suit in Missouri, in a suit between two large corporations, where the amount in controversy is several million dollars, and the controversy between the parties does not involve Fackler in his individual capacity. The burden on Fackler would be significant. Further, none of the operative facts giving rise to Genysis' claim against him occurred in Missouri. Under the circumstances, Missouri is an inconvenient forum for Fackler and asserting personal jurisdiction over him violated his rights under the Due Process Clause of the Fifth and Fourteenth Amendments.

## II. Genesys' claim against Fackler should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) because venue lies not in Missouri, but in the Western District of Kentucky.

28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

A party may move to dismiss a case for improper venue under FED. R. CIV. P. 12(b)(3). *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 55 (2013). Whether venue is proper is governed by 28 U.S.C. § 1391, which generally provides that a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants

are residents of the state in which the district is located; or (2) a judicial district in which a substantial part of the events or omissions given rise to the claim occurred. If venue is improper under 28 U.S.C. § 1391, the case must be dismissed, or transferred under 28 U.S.C. § 1406(a). *Atlantic*, 571 U.S. at 56.

A. Fackler is a resident of the Commonwealth of Kentucky within the Western District of Kentucky.

Fackler is a Kentucky resident, and for purposes of 28 U.S.C. 1391(b)(1), venue lies in Kentucky. Statement of Facts, *Supra* p. v, § A. Therefore, under section 1391(b)(1), venue would be proper in the Western District of Kentucky.

B. A substantial part, if not all, of the alleged events or omissions giving rise to the third-party claim occurred within the geographic boundaries of the Western District of Kentucky.

In determining whether venue is proper under 28 U.S.C. § 1391(b)(2), the court looks to the relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state. *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (we think it far more likely that by referring to "events or omissions giving rise to the claim," Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff).

The facts establish that Fackler's conduct, as alleged in the claim occurred in Kentucky. Statement of Facts, *Supra,* p. vii-viii, ¶¶ 23–36.

Genesys is not able to establish that any events or omissions that give rise to its claim against Fackler occurred in the Western District of Missouri. Indeed, there is not a single allegation in the third-party complaint that asserts that Fackler committed any of the complained-of acts or omissions in Missouri, let alone the Western District of Missouri.

Therefore, with respect to Genesys' claim against Fackler, venue is improper in the Western District of Missouri and the claim against Fackler should be dismissed under 28 U.S.C. § 1406.

**III.    If not dismissed, the third-party claim should be transferred to the Western District of Kentucky under 28 U.S.C. § 1406.**

The court may cure the venue defect by severing the claims against those parties who raise valid venue defenses.  7 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE §1689 (3d ed. 2023).  In turn, 28 U.S.C § 1406 permits the court, "if it be in the interest of justice," to transfer a case to another district where it could have been brought."  There can be no reasonable dispute that the third-party could have been brought in the Western District of Kentucky.

It is fairly well settled that transfer is generally preferred to dismissal when the transferor court is an improper venue.  *See generally* 14D Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 3827 (4th ed. 2023).  However, the preference for transfer occurs in those situations where a plaintiff would suffer prejudice from dismissal because the statute of limitations has run, or if a defendant has misled the plaintiff on the facts relevant to venue.  *Id.*  None of those considerations, however, are present in this case.

Further, district courts often dismiss rather than transfer under section 1406(a) if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged.  14D Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 3827 (4th ed. 2023) (*citing cases*).

Here, for the reasons set out in section I, *supra*, pp. 2 – 12, Genesys should have foreseen that hauling Fackler into a foreign forum for acts or omissions he allegedly conducted while he was a resident of, and physically located in Kentucky, while expedient, was improper.  Therefore,

dismissal is the appropriate action.  Notwithstanding the foregoing, Fackler, in the alternative, requests a transfer to the Western District of Kentucky.

## CONCLUSION

For the reasons set forth above, there is no basis for personal jurisdiction over Fackler. Fackler respectfully requests that the Court dismiss the Third-Party Complaint against Fackler for a lack of personal jurisdiction and venue and award him attorney fees for having to defend against this suit.

Dated this 25th day of July, 2023

Respectfully submitted,

*s/ Sean P. Paris*
Sean P. Paris
Pearson & Paris, PSC
306 W. Jefferson Street
La Grange, Kentucky 40031
Phone: 502-257-0070
email: sparis@kentucky.legal
*Attorneys for Timothy Fackler*
*Admitted Pro Hoc Vice*

*s/ Kirsten Z. Myers*
Kirsten Z. Myers
Pearson & Paris, P.C.
14142 Denver West Parkway
Building 51, Suite 200
Lakewood, Colorado 80401
Phone: (303) 996-8610
Facsimile: (303) 996-8611
Email: kmyers@rockymountain-law.com

*Attorneys for Timothy Fackler*
*Admitted Pro Hoc Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of July, 2023, a true and correct copy of the foregoing was filed with the United States District Court for the Western District of Missouri via the court's CM/ECF system, which will cause a copy of same to be transmitted to all counsel of record.

*s/ Sean P. Paris*

Sean P. Paris