IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SINDOK CO., LTD, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| vs. | ) | Case No. 22-00613-CV-W-GAF |
| | ) | |
| GENESYS INDUSTRIAL CORP., | ) | |
| | ) | |
| Defendant/Counterclaimant, | ) | |

| | |
|---|---|
| GENESYS INDUSTRIAL CORP., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TIMOTHY FACKLER, | ) |
| | ) |
| Third-Party Defendant. | ) |

**ORDER**

Now before the Court is Third-Party Defendant Timothy Fackler's ("Fackler") Motion to Dismiss for lack of personal jurisdiction and for improper venue. (Doc. 48). Also pending is Fackler's Motion to Sever Defendant/Third-Party Plaintiff Genesys Industrial Corp.'s ("Genesys") third-party claim against him from the claims and counterclaims between Genesys and Plaintiff Sindok Co., Ltd. ("Sindok"). (Doc. 49). Genesys opposes both Motions. (Docs. 55, 56). Sindok has taken no position on the Motions. (*See* Docket Sheet). Fackler has also filed reply briefs for both Motions. (Docs. 58, 59). Upon consideration of the parties' arguments and for the following reasons, Fackler's Motion to Dismiss is GRANTED and his Motion to Sever is DENIED as moot.

**DISCUSSION**

I. **BACKGROUND**

On September 27, 2022, Sindok filed its Complaint against Genesys, asserting claims for breach of contract, quantum meruit, and unjust enrichment. (Doc. 1 ("Complaint")). Sindok alleged Genesys failed to pay Sindok for work it completed on a series of projects that furthered Genesys's contract with Lordstown Motors (the "LMC Contract"). (*Id.* at ¶¶ 5-106). Sindok mentions Fackler by name in four of its 128 allegations. (*Id.* at ¶¶ 6, 12, 18, 34). Sindok alleges that from April 1, 2021 through June 5, 2021, Fackler and Mark Aldrich, as then-Genesys employees, requested Sindok design, manufacture, and install four separate components in furtherance of the LMC Contract. (*Id.*). Sindok additionally alleges Genesys requested Sindok design, manufacture, and install numerous other components and perform various other tasks in furtherance of the LMC Contract. (*Id.* at ¶¶ 39-41, 45, 48, 51, 54, 57, 60, 63, 66, 69, 72-74, 77-78, 81, 86, 91, 96).

On November 17, 2022, Genesys filed its initial answer. (Doc. 10). Genesys did not assert any third-party claims at that time. (*Id.*). Thereafter, Genesys sought leave to amend its answer, add a counterclaim against Sindok, and assert a third-party claim against Fackler pursuant to Federal Rules of Civil Procedure 13, 14, and 15 and Local Rule 15.1. (Doc. 30). Sindok opposed Genesys's request to file the counterclaim. (Doc. 31). The Court ultimately granted Genesys's motion (Doc. 33), and Genesys filed its Amended Answer, Counterclaim, and Third-Party Complaint on May 26, 2023. (Doc. 34).

In the Counterclaim and Third-Party Complaint (Doc. 34, pp. 12-32 ("TPC")), Genesys brings a breach of contract claim against Sindok only and tortious interference claims against Fackler. (*Id.* at ¶¶ 93-117). Genesys first claims Sindok's alleged breaches of the agreements

between Genesys and Sindok to further the LMC Contract (the "Sindok Subcontracts") caused premature termination of the LMC Contract. (*Id.* at ¶¶ 93-101). Genesys alleges Fackler separately interfered with the LMC Contract or, alternatively, interfered with its business expectancy of profiting off the LMC Contract. (*Id.* at ¶¶ 102-17). However, Genesys does not seek indemnification, contribution, or set-off from Fackler for any amounts it may be deemed liable to Sindok. (*Id.*). Nor does it claim Fackler interfered in the Sindok Subcontracts. (*Id.*). Instead, Genesys alleges Fackler communicated details of Sindok's alleged delays and mistakes to Lordstown Motor ("LMC")—the other party of the LMC Contract—which interfered with the LMC Contract itself or Genesys's expected profits from the LMC Contract. (*Id.* at ¶¶ 7, 102-17).

Additional relevant well-pleaded facts and evidence are addressed in the analysis section.

## II. LEGAL STANDARD

When a defendant seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011)). To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must allege "sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). Courts may additionally "look beyond the pleadings to determine whether personal jurisdiction exists." *Brothers & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). "The evidentiary showing required at the prima facie stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quotation omitted). When relying on the pleadings and affidavits to decide a motion to dismiss for lack of personal jurisdiction, the Court views the facts in the light most favorable to the nonmoving party and resolves all factual conflicts

in favor of the nonmoving party. *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 646-47 (8th Cir. 2003).

III. **ANALYSIS**

Fackler seeks dismissal of the third-party claims against him for two reasons: (1) the Court lacks personal jurisdiction over him; and (2) the Western District of Missouri is an improper venue for the dispute. (Doc. 48). Because the Court concludes it lacks personal jurisdiction over Fackler, it does not reach the venue issue and limits its discussion accordingly.[1]

In a diversity case, personal jurisdiction "exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" *K-V Pharm.*, 648 F.3d at 592 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)); *see also Fastpath*, 760 F.3d at 820. The Court is bound to accept the interpretation given to a state's long-arm statute by the state's supreme court. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 n.2 (8th Cir. 2011). Under Missouri Supreme Court precedent, a question of personal jurisdiction requires a court to conduct two separate inquiries: (1) whether the defendant's conduct is covered by the long-arm statute; and (2) whether due process requirements are met. *See Missouri ex rel. PPG Indus., Inc. v. McShane*, 560 S.W.3d 888, 891 (Mo. 2018) (en banc). The Court proceeds accordingly.

A. **Missouri's Long-Arm Statute**

Missouri's long-arm statute permits courts to exercise personal jurisdiction over non-resident defendants who, among other acts, commit a tortious act within the state. Mo. Rev. Stat. § 506.500.1(3). In enacting this statute, the Missouri legislature "intended to provide for jurisdiction, within the specific categories enumerated in the statutes, to the full extent permitted

---

[1] This also moots the Motion to Sever.

by the due process clause of the Fourteenth Amendment." *Missouri ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc). Consequently, "Missouri courts have interpreted [the 'tortious act' subsection] to include 'extraterritorial acts . . . producing actionable consequences in Missouri.'" *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012) (quoting *Missouri ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. 1987) (en banc)).

Genesys argues Missouri's long-arm statute reaches Fackler because he allegedly committed the tortious acts in Missouri. (Doc. 55, pp. 8-10). Fackler's alleged tortious acts were correspondence he had with LMC—an Ohio-based company—which originated either from his home office in Kentucky or the worksite in Ohio. (Doc. 48-1 ("Fackler Decl."), ¶¶ 31-35; Doc. 55-1 ("Hagen Decl."), ¶¶ 23-24, 26, 30, 32, 35). None of the correspondence originated in Missouri. (*Id.*). Thus, the alleged torts were not committed in Missouri but are instead extraterritorial acts. Accordingly, to fall within the scope of Missouri's long-arm statute, such acts must have produced consequences in Missouri. *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. 2010) (en banc).

As evidence that Fackler's extraterritorial acts produced consequences in Missouri, Genesys cites (a) that it is a Missouri-based company; (b) Fackler's full-time employment with it; (c) his day-to-day work with hardware, software, and technical support provided to him by it; (d) that he was supervised by employees of Genesys; (e) his three visits to Genesys's Missouri-based headquarters; (f) his regular communications with employees located in Missouri; and (g) that Genesys paid and provided him benefits from a Missouri bank account. (Doc. 55, pp. 3-6 (citing Hagen Decl., ¶¶ 5, 7-18), 9-10). These facts certainly establish Fackler had connections with a Missouri-based company but do not necessarily show that the alleged tortious communications

5

with LMC produced consequences in Missouri. What Genesys fails to argue, but the Court finds relevant, is that Genesys felt the financial impact of Fackler's alleged extraterritorial tortious conduct in Missouri. (Hagen Decl., ¶ 33). For this reason, the Court concludes Missouri's long-arm statute reaches Fackler if, and only if, asserting personal jurisdiction over him comports with due process.

**B.     Due Process Clause**

"The primary focus of [the Due Process] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017). "Critical to due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (cleaned up) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). There are two types of personal jurisdiction: "general" and "specific." *Bristol-Myers Squibb*, 582 U.S. at 262. General jurisdiction permits a court to hear any claim against an individual defendant who is at home in the forum state (i.e., is domiciled there), *Viasystems*, 646 F.3d at 595, or against a corporation whose "'affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State,'" even if all the events underlying the claim occurred elsewhere. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). On the other hand, a court has specific jurisdiction over a defendant when the claim arises out of or is related to that defendant's contacts with the forum. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Fackler is an individual, not a corporation. Therefore, the Court looks to his domicile to determine if it has general jurisdiction over him. The evidence establishes Fackler is domiciled in

6

Kentucky, not Missouri. (Fackler Decl., ¶¶ 1-4). As such, the Court lacks general personal jurisdiction over him. Thus, the Court may only exert its jurisdiction over Fackler under specific jurisdiction principles.

In order to meet the due process requirements for specific jurisdiction, "'the suit' must 'arise out of or relate to the defendant's contacts with the forum.'" *Bristol-Myers Squibb*, 582 U.S. at 262 (alterations omitted) (quoting *Daimler*, 571 U.S. at 127). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (alteration omitted) (quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264.

The Eighth Circuit instructs courts to "carefully consider the facts of each case to assess the nature of the contacts between the defendant and the forum state." *Clune v. Alimak AB*, 233 F.3d 538, 542 (8th Cir. 2000). To do this, courts "consider the totality of the circumstances, using five factors to guide [the] analysis." *Brothers & Sisters in Christ*, 42 F.4th at 952 (citation omitted). Those five factors are: "(1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020). "The first three factors are of 'primary importance' and the 'fourth and fifth factors carry less weight.'" *Brothers & Sisters in Christ*, 42 F.4th at 952 (quoting *Whaley*, 946 F.3d at 452).

In addition to weighing the five factors, courts have applied the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), when a plaintiff has brought an intentional tort claim.

*Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.* ("*Kendall Hunt II*"), 74 F.4th 928, 931 (8th Cir. 2023).

> Under that test, a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state.

*Id.* (cleaned up) (quoting *Brothers & Sisters in Christ*, 42 F.4th at 954). Even under the *Calder* "effects test," the specific jurisdiction inquiry must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In short, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 286. "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021) (citing *Walden*, 571 U.S. at 290).

In cases involving intentional acts of remote employees, such as a breach of employment contract or misappropriation of trade secrets, courts in the Eighth Circuit have found personal jurisdiction "over remote employees working for forum-based employers when they emailed and called people in the forum frequently, traveled to the forum on occasion, accessed servers in the forum, and received payment and supervision from the forum." *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.* ("*Kendall Hunt I*"), No. 21-CV-1004-KEM, 2022 WL 945608, at *6 n.22 (N.D. Iowa Mar. 29, 2022) (collecting cases), *aff'd* 74 F.4th 928 (8th Cir. 2023). However, Genesys does not assert a breach of employment contract claim or misappropriation of trade secrets claim against Fackler. (TPC).

Instead, Genesys asserts tortious interference claims. (*Id.*). This distinction is important and moves the center of the specific jurisdiction analysis (i.e., where the claim arose) to the location of the alleged tortious act. No longer is the intentional wrongful conduct arguably occurring within the forum state. *See Prairie Fields Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 393-94 (D. Minn. 2020) (in misappropriation case, holding plausible basis for personal jurisdiction existed in part because former employee stole trade secrets stored on servers located in forum); *May Dep't Stores Co. v. Wilansky*, 900 F. Supp. 1154, 1162-63 (E.D. Mo.) (in breach of contract case, considering fact that defendant signed a contract amendment in the forum in personal jurisdiction analysis). Here, it is undisputed that, although the intentional acts forming the basis of the claims produced consequences in Missouri, the alleged intentional tortious conduct did not occur in the forum state. Thus, the Court finds the analysis of the specific jurisdiction issue in the context of tortious interference claims in *Kendall Hunt I* persuasive.

In *Kendall Hunt I*, the district court considered the defendant's founders' remote employment by the plaintiff to determine if the founders' contacts with Iowa, the forum state, were sufficient to assert personal jurisdiction over the defendant. 2022 WL 945608, at *6-9. There, Kendall Hunt asserted a tortious interference claim, among others, against Learning Tree, alleging Learning Tree interfered in Kendall Hunt's contractual relationship with an author, Nicholas Baiamonte, by luring him away from Kendall Hunt and convincing him to publish his books with Learning Tree instead. *Id.* at *1.

The two founders of Learning Tree previously worked for Kendall Hunt as editors before starting Learning Tree in October 2019. *Id.* At all times, the founders worked remotely from California, where they both resided, for the Iowa-based Kendall Hunt. *Id.* Author Baiamonte's editor and primary contact at Kendall Hunt before October 2019 was one of Learning Tree's

founders. *Id.* Kendall Hunt asserted that all of its "contracts with Baiamonte were negotiated and entered into in the State of Iowa and that [the founder] was involved in the negotiation and execution of all written agreements between Kendall Hunt and Baiamonte" and that the founder "regularly contacted Kendall Hunt's administrative team in Iowa throughout his employment, including . . . contacts related to the contracting, editorial, and sales processes for the Baiamonte ethics textbook." *Id.* (cleaned up).

Kendall Hunt also noted additional contacts between the founders and Iowa through their prior employment with Kendall Hunt. *Id.* at *2. Similar to the circumstances in the present case, Kendall Hunt cited the founders' access to servers in Iowa; paychecks issued from an Iowa bank; emails to Kendall Hunt employees in Iowa; phone calls to personnel in Iowa; and travel to Iowa for meetings and trainings. *Id.* The district court referred to these contacts as "general contacts" with Iowa arising from the "nature of working for an Iowa-based company" and concluded the general contacts did not "sufficiently relate to the claims at issue to form the basis for personal jurisdiction." *Id.* at *8. Regarding the more claim-specific contacts, the district court determined (a) those contacts could be attributed to Learning Tree and (b) "[t]he nature, quality, and quantity of the contacts weigh against a finding of specific jurisdiction—they do not demonstrate that Learning Tree purposefully directed its activities at Iowa or sought to avail itself of the benefits and protections of Iowa's laws." *Id.* at *9. The district court noted Iowa had an interest in providing Kendall Hunt a forum, but the convenience factor was neutral. *Id.* Weighing the five factors, the district court held Kendall Hunt had not proved the existence of specific jurisdiction over Learning Tree. *Id.* The Eighth Circuit affirmed, specifically stating that the specific-jurisdiction analysis factors did not weigh in favor of finding personal jurisdiction over Learning Tree in Iowa even if the founders' contacts to Iowa were imputed to Learning Tree. *Kendall Hunt*

*II*, 74 F.4th 928.

The circumstances of the present case compare favorably with *Kendall Hunt I*. Fackler had general contacts with Missouri arising out of his employment with a Missouri-based company as outlined above, but those general contacts do not sufficiently relate to the tortious interference claims against Fackler. *See Kendall Hunt I*, 2022 WL 945608, at *8 (concluding general contacts with forum through remote employment do not relate to tortious interference claim); *see also Walden*, 571 U.S. at 285 (Plaintiff "cannot be the only link between the defendant and the forum."). The remaining relevant contacts can be summarized as follows: (1) as a Genesys employee, Fackler worked with LMC and Sindok on project plans, schedules, and budgets concerning the LMC Contract and managed the project from outside the forum; (2) the alleged correspondence forming the basis of the alleged tortious acts occurred outside the forum; and (3) Fackler knew the effects of his alleged tortious conduct would be felt in the forum.[2] Fackler worked with LMC and Sindok from Kentucky and at its plant located in Ohio. The subject of the LMC Contract was located in Ohio. All communications Fackler had with LMC concerning the LMC Contract originated in Kentucky or Ohio.

As in *Kendall Hunt I*, "[t]he nature, quality, and quantity of the contacts weigh against a finding of specific jurisdiction—they do not demonstrate that [Fackler] purposefully directed [his] activities at [Missouri] or sought to avail [himself] of the benefits and protections of [Missouri's] laws." 2022 WL 945608, at *9. Missouri does have an interest in providing a forum for Genesys as a Missouri-based company, which weighs in favor of jurisdiction. However, Missouri is not necessarily the most convenient forum for the parties. "A trial in [Kentucky] would be just as

---

[2] Following *Walden*, the Eighth Circuit has considered knowledge of the effects of tortious conduct as one factor among many supporting personal jurisdiction. *See Whaley*, 946 F.3d at 452-53.

inconvenient for [Genesys] as a trial in [Missouri] would be for [Fackler]." *K-V Pharm.*, 648 F.3d at 595. Thus, the convenience factor is neutral.

The Court acknowledges a difference between the facts of the present case and those of *Kendall Hunt I*. Learning Tree's tortious conduct did not occur during the founders' employment with Kendall Hunt whereas Fackler's alleged tortious acts occurred while he was still employed by Genesys. However, Fackler's employment status does not alter the nature, quality, or quantity of his contacts with Missouri. Fackler's general contacts with Missouri still exist only through his employment with Genesys. The tortious interference claims "arise out of" and primarily "relate to" Fackler's actions in Kentucky and/or Ohio. *See Bristol-Myers Squibb*, 582 U.S. at 262. Therefore, the affiliation between Missouri and Fackler's allegedly tortious conduct is lacking. *See id.* Carefully considering the facts specific to this case and those facts relevant to the claims, *Clune*, 233 F.3d at 542, Genesys has not proved that specific jurisdiction over Fackler rests in this Court.

## CONCLUSION

Although Fackler allegedly committed tortious acts that produced consequences in Missouri, Fackler's connections with Missouri were not such that he would reasonably have anticipated being haled into court here. Accordingly, this Court lacks personal jurisdiction over Fackler. Because the Court lacks jurisdiction, the Third-Party Complaint must be dismissed, which moots the Motion to Sever. For these reasons and the reasons discussed above, Fackler's Motion to Dismiss Genesys's Third-Party Complaint is GRANTED; Genesys's claims against Fackler are DISMISSED; and the Motion to Sever is DENIED as moot.

**IT IS SO ORDERED.**

                                                s/ Gary A. Fenner
                                                GARY A. FENNER, JUDGE

DATED: December 22, 2023

UNITED STATES DISTRICT COURT